### GEORGE W. BRAMLETTE v. JOHN D. ELLINGTON, ET AL.

**Vendor's Lien.**
> A vendor's lien can only be retained when it is expressly stated in the deed what part of the purchase-money remains unpaid.

**Liens Retained by Several Vendors.**
> Where one grantor owns two-thirds of the land conveyed, and another an undivided one-third, and a lien for purchase money is retained, each of said grantors has a lien for the sum due him on the interest he conveyed, and no more.

### APPEAL FROM NICHOLAS CIRCUIT COURT.

October 30, 1879.

OPINION BY JUDGE COFER:

At the common law a vendor had a lien on land sold until the purchase money was paid. By Sec. 26, Chap. 80, Revised Statutes, it was declared that where any real estate should be conveyed, and the purchase money, or a part of it, remained unpaid, the vendor should not thereby have a lien for the same, unless it was expressly stated in the deed what part of the consideration remained unpaid.

The deed before us shows that one of the grantors owned two-thirds and the other one-third of the land, and that notes were executed to each for his interest, and how much was due to each. The effect of that was that each retained his lien on the interest he had conveyed.

But by express stipulation "they retained a lien on the land until the whole purchase money should be paid," and it is contended that thereby each acquired a lien on the interest conveyed by the other. We do not think so. They retained a lien. This presupposed that a lien already existed. Such was not the fact; each had a lien upon his own share, but he had no lien on the share of the other, and could not retain what he never had. This results necessarily from the fact that stating in the deed what part of the purchase

money remains unpaid merely preserves a lien already existing, and does not create a lien. When the parties retained a lien they must be understood to have referred to the lien created by law, and not to have intended to create a new lien.

It is true this construction renders the stipulation that a lien is retained superfluous, but if we take the language as we find it, it admits of no other reasonable construction, and between giving a stipulation no effect and giving it one the language does not reasonably admit of, we must choose the former.

Judgment *affirmed.*

*Hargis & Nowell, Reid & Stone, A. Duvall, for appellant.*

*R. Gudgell, Ross & Kennedy, for appellees.*

---

**Dying Declarations Not Required to Be in Writing.**

The law does not require dying declarations to be reduced to writing, and where they are written they are not required to be attested. Oral declarations may be admissible in evidence.

### APPEAL FROM FAYETTE CIRCUIT COURT.

November 10, 1879.

OPINION BY JUDGE COFER:

The surgeon repeatedly told the deceased that there was no hope of his recovery. The deceased sent for Cooper on Saturday to

write his declaration, and died on Wednesday following. He told Cooper he knew he could not get well and that his death was only a question of time. When considered in connection, these facts seem to us sufficiently to prove that the declaration was made in expectation of near approaching dissolution. That he believed what his surgeon had repeatedly told him is shown both by his declaration to Cooper and the fact that he desired to make a statement of the facts of the difficulty in which he was injured.

That part of the declaration which relates to what took place while the deceased was sitting on Kearney's porch did not relate to the act of killing, and the circumstances immediately attending it and forming part of the res gestæ. *Leiber v. Commonwealth*, 9 Bush 11. The attorney general contends that this does not appear on the face of the declaration, and that in passing upon the question of admitting it in evidence the court must consider the declaration as it appears, and admit or reject it without reference to other evidence which may tend to show that some of the facts detailed occurred at another time and place.

We do not concur in either of the propositions.

The deceased said "Mr. Drake, after passing up and down on the pike several times, took a seat on his steps on the pike" and then goes on to say "Me and my brother John started home when he called to us; we stopped until he came up, when my brother John said to him, 'You are old enough to have some sense,' etc., and while they were talking his wife came up with a gun." This shows that there was an interval of greater or less duration between the time when the deceased sat on Kearney's porch and the meeting of the parties as the two Ryans were proceeding to the home of John, and as only facts and circumstances immediately attending the act of killing are admissible, it is incumbent upon the prosecution to show facts stated in a dying declaration offered in evidence have such relation to the act of killing as renders them admissible in evidence. It is not enough that on the face of the declaration they do not appear to have been disconnected from the res gestae.

The other evidence introduced by the commonwealth shows clearly that there was a considerable interval between the facts first stated, and to which we have been referring, and the fatal meeting, and on that ground that part of the declaration referred to should have been rejected.

But we are of the opinion that its admission was not prejudicial to the substantial rights of the prisoner. The facts stated by the deceased were proved by other witnesses and seem not to have been controverted on the trial. They occurred on a street of the village of Donerail, and that no witness was offered to counteract the statement of the witnesses for the prosecution as to what occurred there tends to show that the defense did not dispute these facts. The prisoner was found not guilty of murder and consequently, the tendency of this part of the dying declaration to prove malice did not prejudice him in that respect, and as their bearing upon the question of self-defense was only collateral and by no means strong, we think it clear that he was not prejudiced by the admission of that part of the declaration we have been considering. The residue of the statement was clearly admissible as relating to res gestae.

It is next objected that there are three attesting witnesses to the paper, only one of whom was called as a witness to prove the declaration. The law does not require dying declarations to be reduced to writing, and if written does not require that it shall be attested, and when this is done it is not necessary to produce more than one of the attesting witnesses. 1 Wharton on Evidence, Sec. 729.

That the court, on objection to the admission of the declaration, struck out a considerable portion, furnished no reason why so much of the residue as would have been competent, if standing alone, should not be read. The declaration not being required to be written, so much of it as was competent could not be rejected because there was incorporated with it matter that was incompetent.

Although the opinion in *Lieber v. Commonwealth, supra,* does not show it, the fact is shown by the record that the declaration offered in evidence was in writing, and the court held that the court below erred in admitting a portion of it, but did not intimate that the whole was inadmissible because a part was so.

The bill of exceptions recites that "The court on motion instructed the jury as follows." This is followed by the instructions given, and they are followed by this: "To which instructions the defendant excepted and still excepts," etc. From this language we must assume that the instructions were given on motion of the commonwealth, and as the record does not show that they were objected to

we cannot consider them. Sec. 282, Criminal Code; Sec. 333, Civil Code; *Loving v. Warren County,* 14 Bush 316.

Wherefore the judgment is *affirmed.*

*Breckinridge & Shelby, W. C. Owen, for appellant.*

*Hardin, for appellee.*